# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

BRENDA A. BLACKBURN, )
)
    Plaintiff, )
)
v. ) Case No. CIV-05-495-SPS
)
MICHAEL J. ASTRUE, )
Commissioner of the Social )
Security Administration, )
)
    Defendant. )

## OPINION AND ORDER

The claimant Brenda Blackburn requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment..." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work in the national economy . . ." *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must

---

[1] Step one requires claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that claimant establish she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See id.* §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity (RFC) to perform her past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant–taking into account her age, education, work experience, and RFC–can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on October 1, 1970, and was 34 years old at the time of the administrative hearing. She has a high school education plus two years of college and previously worked as a cashier, waitress, counter attendant, food assembler, and general office clerk. The claimant alleges she has been unable to work since September 24, 2000, because of residuals from a left ankle injury and anxiety.

## Procedural History

On June 11, 2003, the claimant filed an application for disability benefits under Title II (42 U.S.C. § 401 *et seq.*) and an application for supplemental security income payments under Title XVI (42 U.S.C. § 1381 *et seq.*). The applications were denied. After a hearing on May 11, 2005, ALJ Jennie McLean found the claimant was not disabled in a decision dated August 13, 2005. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found the claimant had the residual functional capacity ("RFC") to perform sedentary work with the

ability to only occasionally climb and balance but to frequently kneel, stoop, crawl, and crouch (Tr. 27). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work in the regional and national economies she could perform, *e.g.*, order clerk, charge account clerk, and stuffer-assembly (Tr. 28).

## Review

The claimant contends that the ALJ erred: (i) by failing to apply the mandatory legal standard to her evaluation of the claimant's mental impairment; (ii) by failing to develop the record with regard to the claimant's mental impairment; (iii) by disregarding the effect of the claimant's mental impairment on her ability to work; and, (iv) by failing to identify the applicable listings and making the requisite findings under the applicable listing criteria. The claimant argues in her first contention that the ALJ failed to evaluate her mental impairment pursuant to the requirements of 20 C.F.R. §§ 404.1520a, 416.920a. In her second contention, the claimant argues, *inter alia*, that the ALJ ignored the psychological findings of Dr. Joe Bennett. The Court finds these arguments persuasive.

The record reveals that the claimant visited Central Oklahoma Family Medicine Center in February 2004 and was examined by Dr. Bennett for complaints of gastric pain, nausea, and vomiting, which was causing her to miss work. She had experienced the problems for some time, but they worsened when she was at work. Laboratory tests showed nothing to explain the claimant's stomach problems. Dr. Bennett requested that the claimant

complete a mood disorder questionnaire, which screened for depression and anxiety. The claimant's results showed moderate to marked depression and marked to severe anxiety. Dr. Bennett referred the claimant for mental health treatment and provided her with samples of Zoloft. Although he noted that gall bladder disease needed to be ruled out, Dr. Bennett assessed the claimant with anxiety and depression (Tr. 200-07). In March 2004, the claimant went to the emergency room at the Seminole Medical Center complaining of worsening abdominal pain, nausea, and vomiting. The claimant was assessed with acute abdominal pain, and urinary tract infection and liver dysfunction were raised as possible causes (Tr. 171-72).

The claimant testified at the administrative hearing that when she was hot, nervous, or worried, she often experienced abdominal pain, vomiting, and dizziness. She indicated that stress at work, *e. g.*, fear of making a mistake and being yelled at and a lot of people coming in for help at once, brought on her feelings of sickness (Tr. 238-39). The claimant testified that outside of work she was anxious and worked up and driving made her nervous. She did not have much of a social life and did not do much of anything (Tr. 239-40). Although Dr. Bennett provided her with samples of Zoloft, the medication worsened her nausea and caused her to feel lightheaded, so she stopped taking it (Tr. 239). The claimant still was having trouble with anxiety and had recently completed the necessary paperwork to receive treatment at the Mental Health Clinic of Southern Oklahoma. At the time of the hearing, she was waiting to be contacted about her treatment (Tr. 244-46).

The ALJ concluded that "the claimant fail[ed] to establish the presence of a severe mental impairment" after conducting the following analysis:

> Symptoms of anxiety and depression have been noted; however, the evidence fails to reveal significant restrictions in the claimant's abilities to understand, remember, and carry out simple instructions; use judgment; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting because of mental impairments. The evidence does not reveal a mental impairment requiring psychiatric care or use of medications reflective of a mental impairment that could be expected to impose significant restrictions in the claimant's abilities to perform the mental functions described herein.

(Tr. 26). This analysis was flawed, however, because the ALJ failed to employ the "special technique" set forth in 20 C.F.R. § 404.1520a and § 416.920a and to document her findings. *See Cruse v. United States Dep't of Health & Human Servs.*, 49 F.3d 614, 617 (10th Cir. 1995) ("When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Secretary must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a [and § 416.920a] and the Listing of Impairments and document the procedure accordingly."), *citing Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir. 1993). In conducting a "PRT analysis" pursuant to these regulations, the ALJ must first evaluate whether the claimant has a "medically determinable mental impairment," 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1), and then determine the degree of function that the claimant has lost as a result of the impairment by assessing the

claimant's level of functioning in four specific areas. *Cruse*, 49 F. 3d at 617.[2] *See also Grogan v. Barnhart*, 399 F.3d 1257, 1264 (10th Cir. 2005) ("[T]here is a specific two-step procedure that the Commissioner must follow when determining whether a claimant has a mental impairment. The Commissioner must first evaluate your pertinent symptoms, signs and laboratory findings to determine whether you have a medically determinable mental impairment(s). Then the Commissioner evaluates the impact that the mental impairment has on the claimant's ability to function under 20 C.F.R. § 404.1520a(b)(2), *et seq.*") [citations and quotations omitted]. The ALJ does not have to personally complete a PRT form, but she must document her findings in the decision. 20 C.F.R. §§ 404.1520a(e), 416.920a(e). Here, the ALJ neither followed the proper procedure nor documented appropriate findings. Indeed, it is impossible to determine whether the ALJ found that there was no medically determinable impairment, or that there was such an impairment that was not severe.

Further, other than noting the claimant had symptoms of anxiety and depression, the ALJ made no mention of Dr. Bennett's specific findings that the claimant's responses on the mood disorder questionnaire revealed moderate to marked depression and marked to severe anxiety. It was error for the ALJ not discuss Dr. Bennett's findings, especially since they appeared to raise the possibility that the claimant's mental impairment was severe. *See*

---

[2] The four broad areas of function are the following: (i) activities of daily living; (ii) social functioning; (iii) concentration, persistence, or pace; and, (iv) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ must assess the degree of functional loss in each area on a five-point scale. The first three areas utilize descriptive terms of none, mild, moderate, marked, and extreme. The fourth area utilizes numerical terms of none, one to two, three, and four or more. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2).

*Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler,* 739 F.2d 1393, 1394-95 (9th Cir. 1984). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is significantly probative.") [quotation omitted].

Accordingly, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis of the claimant's mental impairment. On remand, the ALJ should: (i) conduct a PRT analysis of the claimant's mental impairment pursuant to 20 C.F.R. § 404.1520a and § 416.920a; (ii) discuss the findings of Dr. Bennett; and, (iii) consider whether a consultative examination would help resolve the issue of impairment, *see Hawkins,* 113 F.3d at 1167.[3] If the ALJ determines the claimant's mental impairment is severe at step two, she should then include any limitations from such an impairment in the RFC and re-determine whether the claimant is disabled.

---

[3] In her second contention, the claimant also argues that the ALJ should have ordered a mental evaluation to further develop the record as to her mental impairment. While an ALJ has broad latitude in deciding whether or not to order a consultative examination, *see Hawkins,* 113 F.3d at 1166, one should be ordered "if such an examination is necessary or helpful to resolve the issue of impairment." *Id.* at 1167. A consultative examination also may be required if there is a direct conflict in the medical evidence, *the medical evidence is inconclusive,* or when additional tests are needed to explain a diagnosis already in the record. *Id.* at 1166 [emphasis added]. Thus, although the Court does not hold that the ALJ committed reversible error by failing to order a consultative examination, on remand the ALJ should consider whether one should be ordered and explain her decision either way.

## Conclusion

For the reasons set forth above, the ruling of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further findings consistent with this Opinion and Order.

DATED this 27th day of March, 2007.

　　　　　　　　　　　　　　　　　　STEVEN P. SHREDER
　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE